## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| MELODY HORACK, | : | |
| Plaintiff, | : | Case No.: |
| v. | : | |
| THE HARTFORD INSURANCE COMPANY | : | |
| Defendant. | : | |
| | : | |

---

## COMPLAINT

Plaintiff, Melody Horack, ("Horack" or "Plaintiff"), by and through the undersigned counsel, hereby states her Complaint against the Defendant, The Hartford Insurance Company, as follows:

### Jurisdiction, Venue, and Parties

1.      Plaintiff Melody Horack's claims arise from the wrongful denial of her long-term disability ("LTD") benefits under an employee welfare benefit plan sponsored by her employer, Cincinnati Children's Hospital Medical Center and she seeks to recover benefits due under the terms of the plan, to enforce and clarify her rights, and for a full and fair review.

2.      Plaintiff is a citizen of the State of Ohio, who, at all times relevant to this action, was a participant in the Cincinnati Children's Hospital Medical Center Long-Term Disability Coverage Plan (the "LTD Plan"), sponsored by her employer, and worked in Cincinnati, Ohio.

3.      Defendant The Hartford Insurance Company ("Hartford") is an insurance company to whom Cincinnati Children's Hospital Medical Center delegated its fiduciary responsibility of

1

making benefit determinations for the LTD Plan. Hartford may be served at their offices located at One Hartford Plaza, Hartford, CT 06155.

4.      This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, et seq., to recover benefits due under employee benefit plans, to clarify the rights of Ms. Horack to future benefits under such plans, and to recover attorneys' fees and costs.

5.      This Court has subject matter jurisdiction pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Under Section 502(f) of ERISA, 29 U.S.C. § 1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

6.      Venue is properly in this District pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the breaches took place in this District and Hartford resides or may be found in this District, and Hartford undertook to insure participants residing and working in Hamilton County, Ohio.

## FACTUAL ALLEGATIONS

### Plaintiff's Participation in the LTD Plan

7.      Plaintiff is 63-years-old and had worked for the Cincinnati Children's Hospital Medical Center as a Senior Supply Chain Associate in Cincinnati, Ohio, since March 30, 2008. At all times relevant to this action, Plaintiff was a participant in the LTD Plan sponsored by her employer.

8.      At all times relevant, Plaintiff was a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Cincinnati Children's Hospital Medical Center LTD Plan.

9.  At all relevant times, the LTD Plan provides for LTD benefits and has been an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

10.  At all relevant times, Hartford is and has been the claims administrator of the LTD Plan within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

11.  At all relevant times, Hartford has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

12.  Upon information and belief, Hartford is both the claims adjudicator and the claims payor, and operates under a conflict of interest.

13.  Long term disability benefits under the LTD Plan have been insured pursuant to a Policy issued by Hartford.

14.  As a Senior Supply Chain Associate for the Cincinnati Children's Hospital Medical Center, Plaintiff was provided with long term disability insurance coverage under the LTD Plan.

### The Plan's Definition of Disability

15.  Under the LTD Plan, "Disability or Disabled" is defined as

-   You are prevented from performing one or more of the Essential Duties of:
    1) Your Occupation during the Elimination Period;
    2) Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
    3) After that, Any Occupation.

-   If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first. For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a

3

modified job if such job was offered to You by Your Employer, or another employer, and You refused the offer.

16.     Ms. Horack has been continuously disabled since March 2020 – first from her own occupation and, after 24 months, from performing "one or more of the Essential Duties of…Any Occupation" for which she is qualified by education, training or experience and which has an earning potential of at least 80% of her indexed pre-disability earnings.

**Plaintiff's Disabilities**

17.     Ms. Horacek suffers from severe disc degeneration, anterolisthesis, and post lumbar fusion among other spinal issues, resulting in chronic upper and lower back pain, radiating to hips and thighs, restricted movement, and balance difficulties. Imaging confirms thoracic degenerative disc disease and spondylosis. Pain is exacerbated by sitting, standing, or walking for extended periods. Injections offer only temporary relief. Symptoms include numbness and pain shooting down thighs when standing, extreme pain when sitting, and balance issues. Ms. Horacek's cardiac conditions prevent her from taking NSAIDs, so she is prescribed gabapentin, lyrica, and tramadol for pain management.

18.     Ms. Horacek also suffers from cervical radiculopathy, as evidenced by a December 2, 2022 MRI revealing disc bulges, retrolisthesis, and nerve root compression at multiple levels in her cervical spine. This condition causes neck pain, restricted range of motion, and radiating pain and numbness into her arms and shoulders. Dr. Donald Carruthers ("Dr. Carruthers"), her pain management physician, noted limited shoulder movement with edema during recent visits, hindering basic tasks like reaching above her head or typing. Despite attempts at physical therapy and injections, Ms. Horacek's symptoms persist. Hartford was provided a functional limitations

4

statement and physical therapy notes to confirm the extent of her restrictions, including limited range of motion in her cervical spine.

19.    Ms. Horacek suffers from coronary artery disease (CAD) with a history of coronary artery bypass surgery, complicated by non-union of the sternum and an aortic embolism. These conditions result in chest pain, shortness of breath, and tachycardia. Her heart rate elevates to over 150bpm with minimal exertion, necessitating frequent rest. Additionally, lumbar x-rays reveal severe vascular calcification consistent with her CAD, causing leg pain and intermittent antalgic gait due to right leg claudication.

20.    Ms. Horacek suffers from ongoing leg pain and swelling stemming from multiple sources, including claudication, radicular symptoms, and the removal of an artery during heart surgery. Additionally, she experiences leg and knee pain due to osteoarthritis.

21.    These conditions severely limit her ability to walk or stand for more than 10-15 minutes at a time, up to 2-3 hours per day.

22.    Ms. Horacek's medical history includes chronic diarrhea/incontinence and urinary incontinence, attributed to her underlying conditions, including Cauda Equina Syndrome as noted in her medical records. She also suffers from chronic irritable bowel syndrome (IBS) and colitis, resulting in intermittent diarrhea. Diagnosis of sessile serrated polyp adenomas further exacerbates her gastrointestinal symptoms. Her ongoing gastrointestinal conditions significantly contribute to her difficulty in leaving the house for extended periods.

23.    Ms. Horacek's medical conditions also include chronic obstructive pulmonary disease (COPD), which further impacts her disability. She experiences extreme fatigue, leading to daytime sleepiness.

24.     Ms. Horacek experiences arthritis in her thumb joints, having undergone cyst removal and bone spur reduction procedures in both thumbs. This condition limits her ability to hold objects and perform fine motor tasks due to pain and decreased mobility. The recurrence of bone spurs exacerbates her hand pain. Furthermore, she suffers from carpal tunnel syndrome in her wrists, resulting in weakness and further impairment of her grip strength.

### Ms. Horack's LTD Application and Benefits

25.     Due to the progressive severity of her symptoms and significant impact to her ability in performing duties within her occupation, Ms. Horack had to stop working completely in March 2020.

26.     Plaintiff's role as a Senior Supply Chain Associate encompassed duties such as locating, retrieving, delivering, and restocking medical supplies and crash carts within the hospital. Additionally, she assisted nurses and staff by managing product orders and inventory, coordinated daily operations within assigned areas, trained both new and existing employees, and conducted research and problem-solving tasks related to Materials Management.

27.     The demands of this position in the emergency room necessitated excellent physical stamina to meet requirements such as frequent bending, heavy lifting ranging from 50 to 80 pounds, and prolonged periods of standing and walking.

28.     In the general workplace, the physical demands entailed the capability to exert force ranging from 20 to 50 pounds occasionally, or 10 to 20 pounds frequently, with a constant requirement to move objects weighing up to 10 pounds. Additionally, frequent standing and walking were necessary.

29.     As a result of Plaintiff's debilitating medical conditions, she was and remains disabled under the terms of the Plan.

30. Ms. Horack made a timely claim for short-term disability ("STD"), which Hartford approved from March 30, 2020 through September 27, 2020 when benefits were exhausted.

31. Once her STD benefits were exhausted, Plaintiff made a timely claim for LTD benefits, which were approved by Hartford on September 28, 2020, finding her totally disabled from her own occupation onward.

**Hartford Mishandles Plaintiff's Claims for Benefits**

32. Although Hartford found Ms. Horack disabled from her own occupation, it ceased paying benefits in September 2022 with no notification.

33. Ms. Horack was told by Hartford representatives they were awaiting updated records. After receiving all requested documentation, Hartford neglected to reopen the claim or inform Ms. Horack of any adverse decision.

34. On December 14, 2022, examiner, Catherine Wendlandt, proposed conducting a follow-up on the claim and potentially referring it for an Independent Medical Evaluation (IME), finding Plaintiff satisfied her Proof of Loss Requirements. Another examiner, Jessica Agnew opposed reopening the claim and concluded the claim should remain "closed" while it performed further review.

35. Hartford continued to refuse payment of the LTD benefits or issue an adverse decision until after an IME was performed and approved an IME referral request on December 21, 2022. However, Defendant unreasonably delayed scheduling an IME for approximately two more months while attempting to find a less "expensive" provider to conduct the exam.

36. Hartford settled on Dr. Rafid Kakel, a physician who regularly performs IMEs for insurance companies, including Hartford. He did not perform the IME on Plaintiff until February

28, 2023. Without seeking an alternative provider for a timelier option, Hartford agreed to the later date, further prolonging its decision on Ms. Horacek's claim file.

37.     Dr. Rafid D. Kakel charged $1,995.00, compared to the other responding physicians who charged $5,290, demonstrating significantly less time than one would reasonably expect for a medical doctor to review 319 pages of medical records, thoroughly evaluate Ms. Horacek in person, and issue a reliable written opinion for Hartford

38.     Upon information and belief, it was widely understood within Hartford that Dr. Kakel would not be compensated enough to thoroughly review Ms. Horacek's medical records or evaluate her in-person.

39.     On February 28, 2023, Ms. Horack attended the scheduled IME, conducted by Dr. Rafid D. Kakel, an occupational medicine specialist.

40.     Hartford intentionally truncated the record it provided to Dr. Kakel before the examination and on which he based his findings.

41.     Dr. Kakel spent minimal time with Ms. Horacek, failing to perform a thorough evaluation of Ms. Horacek's reported symptoms. For instance, Dr. Kakel did not evaluate Ms. Horacek's cervical range of motion or neck pain despite cervical radiculopathy being one of the reported conditions contributing to her disability from any occupation.

42.     Dr. Kakel issued a written report opining that she could sit, stand, and walk for 20-minute intervals, totaling up to 3 hours each per day.

43.     This finding, alone, demonstrates Plaintiff's inability to work in a  sedentary capacity because "sedentary" occupations according to Hartford require sitting for at least 5.5 hours per work day; light and medium duty occupations require walking or standing for at least 5.5 hours per work day.

44.     Dr. Kakel specified Ms. Horacek could only lift, carry, push, and pull objects weighing up to 10 pounds occasionally. Additionally, Dr, Kakel opined she could occasionally reach above shoulder level and climb stairs, and should avoid climbing ladders.

45.     Dr. Kakel projected these restrictions to be long-term, and expressed a poor prognosis for improvement due to her chronic conditions, which were not expected to ameliorate.

46.     Despite the exertional limitations falling below a sedentary occupational demand, Dr. Kakel offered a biased and incorrect conclusion that Ms. Horacek could work in a "sedentary" level occupation on a regular and consistent basis for 40 hours a week.

47.     Dr. Kakel did not find Ms. Horacek to be magnifying symptoms or malingering, and credited her reports of chest and back pain.

48.     Dr. Kakel did not offer any opinion disagreeing with Ms. Horacek's treating physicians' opinions that Ms. Horacek was disabled or disagree with their more specific restrictions and limitations.

49.     Upon information and belief, MES Solutions, the third-party vendor through which Hartford hired Dr. Kakel, communicated to Hartford employees and to Dr. Kakel about Ms. Horacek's claim, and facilitated Dr. Kakel's review of medical records, and assisted with the drafting of the summary of the medical records, among other things.

50.     Upon information and belief, Hartford, Dr. Kakel, and MES Solutions communicated about Ms. Horacek through a vendor portal or other similar means, which tracks the amount of time Dr. Kakel and/or other staff reviewed Ms. Horacek's medical records, documents any communication between Hartford, Dr. Kakel, and/or MES Solutions, documents any drafts or revisions to the opinion, and allows Dr. Kakel to receive assistance from MES Solutions in writing the report.

9

51.     Upon information and belief, Hartford has a contractual agreement with MES Solutions which provides that all information about Ms. Horacek and other claimants maintained by MES Solutions is Hartford's property and remains under Hartford's control.

52.     Upon receipt of Dr. Kakel's "IME", Hartford failed to review and/or ignored the underlying findings and relied exclusively on his incorrect and biased statement that Ms. Horacek could work in a sedentary occupation on or about March 8, 2023 and determined to uphold its previously undisclosed September 28, 2022 decision to deny ongoing LTD benefits.

53.     On March 10, 2023, Ms. Horack called expressing concern that she stopped receiving LTD monthly benefits without receiving a denial letter. Ms. Horack also asked about the IME results, and expressed her inability to work due to mobility issues and back pain, and notified Hartford that during the IME, she required assistance to stand up from the chair even though Dr. Kakel did not include any such observations in his report.

54.     Hartford performed what it called an Employability Analysis for Ms. Horack around March 20, 203 during which the Hartford representative failed to incorporate Dr. Kakel's specific findings, such as the inability to walk, stand, or sit for more than 3 hours a day. In addition, Hartford failed to incorporate any of the additional, specific restrictions and limitations provided by Ms. Horacek's treating providers, though they were never rejected by Dr. Kakel, into its "Employability Analysis".

55.     Hartford also failed to consider Ms. Horacek's non-exertional limitations due to severe pain, fatigue, chronic diarrhea, among others.

56.     The analysis attempted to match Ms. Horacek with unsuitable occupations that don't align with her physical capabilities, background, training, experience, or a "gainful wage" as required under the Plan.

57.     . Hartford issued a denial letter dated March 24, 2023, six months after Hartford ceased benefit payments, notifying Ms. Horacek that as of September 28, 2022, she was deemed ineligible for LTD benefits.

## Plaintiff's Appeal and Defendant's Denial

58.     On September 15, 2023, Plaintiff timely appealed Hartford's denial of LTD benefits and provided supplemental medical records in support of her continued disability.

59.      Hartford unreasonably waited 33 days to refer the claim file to paid file reviewers Hossein Molazadeh, MD ("Dr. Molazadeh") and Hunter Vincent, DO ("Dr. Vincent"), through the third-party vendor Exam Coordinators Network ("ECN"), a division of Genex, in October 2023.

60.     The reviews conducted by Drs. Vincent and Molazadeh lacked sufficient explanation for their conclusions, rendering it impossible to adequately address their opinions.

61.     Furthermore, both reviewers offered inapposite conclusions: on the one hand neither dispute Ms. Horack's diagnoses or treatment or reported subjective symptoms of pain, but simultaneously conclude, without explanation, that she has no restrictions related to sitting erect at a desk, or reconcile their differing conclusions from her treating physicians and even the in-person paid evaluator Dr. Kakel.

62.     Furthermore, neither reviewer sufficiently considered Ms. Horack's hand and arm limitations due to arthritis and Carpal Tunnel Syndrome, nor her urinary and bowel incontinence from Cauda Equina Syndrome, which would significantly impact her ability to work consistently. They also overlooked the effects of her Coronary Artery Disease, Nonunion of Sternum, and Aortic Embolism, which further hinder her ability to engage in minimal activity.

63. Upon information and belief, ECN, the third-party vendor through which Hartford hired Drs. Vincent and Molazadeh, communicates to Hartford employees and to Drs. Vincent and Molazadeh about Ms. Horacek's claim, facilitated their review of medical records, assisted with the drafting of their reports, and acted as an intermediary between Hartford and the medical file reviewers.

64. Upon information and belief, Hartford, Drs. Vincent and Molazadeh, and ECN communicated or had access to internal communications, about Ms. Horacek through an online portal or other similar means.

65. Upon information and belief, the online portal or reporting features track the amount of time the paid file reviewers and/or other staff reviewed Ms. Horacek's medical records, documents any communication between Hartford, the paid file reviewers, and/or ECN, maintains copies of any drafts or revisions to the opinions, and allows the paid file reviewers to receive assistance writing the report.

66. Upon information and belief, Hartford has a contractual agreement with ECN which provides that all information about Ms. Horacek and other claimants maintained by ECN is Hartford's property and remains under Hartford's control.

By letter dated February 23, 2024, Hartford upheld the denial, issuing a defective and deficient rational that lacked compliance with ERISA and the claim regulations.

### **Claim for Relief**

### **(ERISA) §502(a)(1)(B)**

67.     Hartford's denials constitute a breach of its obligation under the Plan and ERISA to pay benefits to Ms. Horack, and Ms. Horack has exhausted all administrative remedies set forth in the Plan and required by ERISA.

68.     Hartford's repeated refusal to consider information submitted with Ms. Horack's claims and appeals constitute a breach of its obligations under the Plan and ERISA.

69.     Hartford refused to make a timely final benefit determination in violation of ERISA, the Plan, and the Claim Regulations.

70.     Hartford's denial of continued benefits, and refusal to timely approve Ms. Horack for the period it already found Ms. Horack disabled constitutes unreasonable claim procedures, a breach of its obligations under the ERISA, the Plan, and the Claim Regulations and arbitrary and capricious denial of benefits.

71.     Hartford's determination that Ms. Horack is disabled through September 28, 2022, but not disabled after September 28, 2022 without any change or improvement in her disabling conditions is wrong, unsupported by the evidence, and arbitrary and capricious.

72.     Hartford's refusal to explain why it disagrees with Social Security Administration's finding of total disability from any gainful occupation violates ERISA, the plan, and Claim Regulations, while requiring Plaintiff to apply for Social Security Disability benefits and financially benefiting from her receipt of those benefits.

73.     It is Hartford's burden to prove that *de novo* review is not applicable in this matter.

74.     Even if the Plan grants sufficient discretionary authority to Hartford, this Court should review the decision to terminate Ms. Horack's claim for LTD benefits under a *de novo* standard of review because Hartford failed to follow applicable ERISA regulations, the Plan's

13

requirements and terms, and its own policies and procedures, and because Ms. Horack was denied a full and fair review.

75.     Alternatively, the denial of Ms. Horack's LTD benefits was wrongful, arbitrary, and capricious, and not the product of a deliberate principled reasoning process, including Hartford's wrongful disregard of the medical evidence and opinions of Ms. Horack's own treating physicians; relying on the flawed, superficial, and biased conclusions of non-treating and non-examining paid physicians, whose opinions conflict with Hartford's own findings as well as Ms. Horack's treating physicians' opinions and the overwhelming medical evidence; failing to follow its own policies and procedures; refusing to consider all available information Ms. Horack submitted with her claims and appeals; and denying Ms. Horack a full and fair review.

76.     Hartford violated the plan and ERISA claim procedures by refusing to provide, upon request, all "relevant" information to Ms. Horacek, including all information submitted, considered, or generated while reviewing Ms. Horacek's claim to the extent the information is outsourced to and maintained on third-party vendor platforms and communication channels, despite the third party vendors acting on Hartford's behalf and despite all information maintained by the vendors remaining Hartford's property.

77.     Ms. Horack is entitled to discovery to probe and ascertain the issues of procedural due process and conflict of interest and bias under which Hartford reviewed and failed to properly adjudicate Ms. Horack's claim for benefits, and to complete the Administrative Record.

78.     Ms. Horack was and continues to be disabled as defined under the Plan.

79.     As a result of the foregoing, Ms. Horack has suffered losses in the form of unpaid benefits of an amount to be determined from September 29, 2022 and continuing for as long as she remains disabled under the Plan or until her normal retirement age.

80.     Ms. Horack is entitled to a judgment against Defendant in the amount of the unpaid benefits under the Plan, as well as an order requiring the Plan to pay benefits to her for as long as she remains disabled under the Plan.  Ms. Horack is further entitled to prejudgment and post judgment interest and an award of attorneys' fees under ERISA § 502(g) in an amount to be proven.

WHEREFORE Plaintiff Melody Horack, requests the Court grant her the following relief from Defendant, The Hartford Insurance Company as follows:

a) a judgment in the amount of all her past-due benefits under the Plan;

b) an order requiring the Defendant and/or the Plan to pay her benefits for as long as she remains disabled;

c) her costs and attorney's fees; and

d) all other relief to which she is entitled, including a *de novo* review of the decision to deny the claim.

Dated: June 21, 2024

/s/ *Claire W. Bushorn Danzl*
Clarie W. Bushorn Danzl, Esq. (0087167)
*Attorney for Plaintiff*
The Bushorn Firm, LLC
8110 Sycamore Street
Cincinnati, OH 45202
Phone: (513) 827-5771
Fax: (513) 725-1148

E-mail: cbushorn@thebushornfirm.com